UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ANDREA W.,

                Plaintiff,

v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

                Defendant.

CASE NO. 2:18-cv-01159 JRC

ORDER ON PLAINTIFF'S COMPLAINT

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and Local Magistrate Judge Rule MJR 13. *See also* Consent Filed by Plaintiff To Proceed Before a Magistrate Judge, Dkt 2. This matter has been fully briefed. *See* Dkts 10, 11, 12.

At the second hearing on plaintiff's application for benefits on the basis of fibromyalgia, rheumatoid arthritis, and other conditions, the Administrative Law Judge ("ALJ") concluded that plaintiff was not disabled. In doing so, the ALJ misapplied the law-of-the-case doctrine and

adopted prior findings giving weight to reviewing physicians' opinions. Then, the ALJ improperly discredited the opinion of plaintiff's treating doctor and treating nurse practitioner—opinions that included limitations on plaintiff's physical abilities beyond those incorporated into the RFC. This Court finds that these errors were not harmless and that a remand for further proceedings is appropriate.

## FACTS

In February 2011, plaintiff applied for disability insurance benefits under 42 U.S.C. § 423 (Title II) and supplemental security income benefits under 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act and alleged disability beginning in January 1996, when plaintiff was 26. *See* AR. 262, 881. Plaintiff's highest level of education was completing two years of college. *See* AR. 266. Plaintiff's most recent job was in 2000, when plaintiff worked in customer service. *See* AR. 267. She alleged that she could no longer work because of fibromyalgia and rheumatoid arthritis. AR. 266. The Administration denied her applications initially and following reconsideration. AR. 881.

After an ALJ issued an unfavorable decision on plaintiff's claim, plaintiff sought review in the District Court, which remanded the case to ALJ Larry Kennedy. AR. 881, 903. At the second hearing, in March 2017, plaintiff amended her alleged onset date to February 2011, resulting in dismissal of her Title II application. *See* AR. 882. Regarding plaintiff's Title XVI application, the ALJ found that plaintiff was not disabled during the relevant period. AR. 903. At step 2, the ALJ found that plaintiff had at least the severe impairments of rheumatoid arthritis, fibromyalgia, a history of left upper arm injury with brachial plexus injury, degenerative disc

disease of the cervical and lumbar spine, and depressive, anxiety, and post-traumatic disorders. *See* AR. 884–85.

The Appeals Council denied plaintiff's request for review. AR. 1. Plaintiff then filed a complaint for judicial review of the ALJ's decision in this Court. *See* Dkt. 4.

## DISCUSSION

Plaintiff argues that the ALJ erred when he rejected all medical opinions except those rendered by Agency reviewing physicians and when he evaluated plaintiff's credibility, lay witness statements, and the vocational expert's testimony. Dkt. 20, at 1.

**I. Legal Principles**

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

**II. Law of the Case**

In the ALJ's discussion of the medical opinion evidence, the ALJ analyzed only the opinions that he gave "less weight" to; although the ALJ gave the most weight to State reviewing physicians' opinions, the ALJ did so by adopting the findings from the prior ALJ decision. AR. 897. The ALJ explained that he found that the District Court had not disturbed the prior ALJ's decision to give greater weight to the reviewing physicians' decisions. *See* AR. 897. Plaintiff argues that the ALJ's reasoning in this regard was erroneous. Dkt. 10, at 4–5. This Court agrees.

The law-of-the-case doctrine generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case. *Hall v. City of L.A.*, 697 F.3d 1059, 1067 (9th Cir. 2012). The doctrine is primarily concerned with efficiency and should not be applied when the evidence on remand is substantially different, when the controlling law has changed, or when applying the doctrine would be unjust. *See Merritt v. Mackey*, 932 F.2d 1317, 1320 (9th Cir. 1991). The decision to apply the law-of-the-case doctrine is discretionary. *See Hall*, 697 F.3d at 1067.

When this case was initially appealed to a district court, plaintiff argued that the ALJ erred at step 5, among other things. *See* AR. 999. The district court noted that "[b]ecause the Court recommends reversing and remanding this case for further proceedings based on the ALJ's assessment of the medical evidence at step two and beyond, and errors in the lay witness statements, the Court need not address the arguments regarding step 5." AR. 999; *see also* AR. 1007 (adopting the report and recommendation). Thus, the ALJ is incorrect that the district court left "most of the prior decision undisturbed and upheld the remainder of the alleged errors." *See* AR. 882. The balance of the ALJ's analysis is suspect because the ALJ took such a limited view of his role on remand.

Defendant echoes the ALJ's rationale that the "law of the case" precludes completely reopening the case on remand and cites *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016). *See* AR. 882; Dkt. 11, at 2. But in that case, the Ninth Circuit declined to apply the law-of-the-case doctrine, holding only that it could apply in certain situations and was discretionary with the court. *See Stacy*, 825 F.3d at 567. Here, because the plaintiff submitted substantially more evidence to the ALJ for consideration on remand, the evidence on remand is substantially different, and the law-of-the-case doctrine does not apply. *See Merritt*, 932 F.2d at 1320.

### III. Medical Opinion Evidence

Not only did the ALJ wrongly give the law-of-the-case doctrine as a justification to fully credit the reviewing physicians' opinions, but the ALJ also rejected each one of the treating providers' opinions. *See* AR. 897–901. This Court agrees with plaintiff that the ALJ erred when he rejected the opinions of plaintiff's treating physician Mary Ballard, M.D., and plaintiff's treating nurse practitioner, Teresa Marshall, N.P. *See* Dkt. 10, at 6.

#### A. Dr. Ballard

"As a general rule, more weight should be given to the opinion of a treating source than to the opinions of doctors who do not treat the claimant." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). However, where a treating doctor's opinion is contradicted by another doctor, the treating doctor's opinion may be rejected if an ALJ provides "'specific and legitimate reasons' supported by substantial evidence in the record[.]" *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). Here, because Dr. Ballard's limitations were contradicted by those of the reviewing physicians, who thought that plaintiff's limitations did not preclude her from performing a reduced range of light work, this Court reviews whether the ALJ gave specific and legitimate reasons, supported by substantial evidence, to reject Dr. Ballard's opinions. *See* AR. 92–93, 970.

In 2012, Dr. Ballard opined that plaintiff had permanent neck injury and rheumatoid arthritis that made her "[u]nable to lift at least 2 pounds or unable to stand or walk" and unable to drive for more than an hour. *See* AR. 642. In 2013, Dr. Ballard again diagnosed fibromyalgia, rheumatoid arthritis, and neck injury (*see* AR. 897), as well as neck numbness and trauma-related anxiety—all of which were permanent conditions. AR. 1301–02. Dr. Ballard opined that these conditions affected plaintiff's abilities to reach, climb, grip items, walk, type, or sit for

protracted periods without having to frequently get up, distracting others. AR. 1301. Ultimately, Dr. Ballard opined that plaintiff could not work at all, limiting her to "0 hrs" per week. AR. 1301.

"The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). The first reason that the ALJ gave was that Dr. Ballard failed to "provide a completed evaluation with objective findings consistent with the profound restrictions she indicates." AR. 897. To the extent that the ALJ found that Dr. Ballard's opinions were brief and conclusory, however, substantial evidence does not support such a characterization. Dr. Ballard's opinions went beyond simply conclusory opinions and included details about her observations, diagnoses, and other facts to support her opinions. *See, e.g.*, AR 642 (explaining that side-effects from plaintiff's medication interfered with her ability to drive), 1301 (explaining that reaching and climbing limitations resulted from "posterior central annular tears," that numbness in plaintiff's extremities limited her typing, and that being unable to sit for long periods without frequently getting up would distract others).

Moreover, even if the ALJ concluded that Dr. Ballard's opinions were conclusory, it was improper to reject those opinions if they were supported by Dr. Ballard's treatment notes. *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014). Dr. Ballard's treatment notes include that on various visits, plaintiff complained of nausea as a side effect of her medication (AR. 736), that Dr. Ballard observed swelling in plaintiff's neck, tension, and limited range of movement (AR. 739), and that plaintiff suffered from anxiety, fibromyalgia, migraine headaches, persistent nerve pain, and symptoms from her neck injury that prevented sitting and using a

computer. AR. 740, 1272, 1274, 1276. In 2013, an x-ray revealed evidence of arthritis in plaintiff's left ankle, leading to an osteoarthrosis diagnosis by Dr. Ballard. *See* AR. 1284–85.

But the ALJ's discussion of Dr. Ballard's treatment notes overlooks all of these observations that support Dr. Ballard's opinions. *See* AR. 897. Although an ALJ may choose between conflicting interpretations of the evidence, an ALJ is not free to simply overlook evidence that supports a treating doctor's opinion.

The next reason that the ALJ gave was that Dr. Ballard's opinions were inconsistent with the record "as a whole as discussed above at finding #5 [sic], including the unremarkable clinical findings reflected in most records; the claimant's incomplete compliance with treatment; and the conservative nature of the claimant's treatment." AR. 897. Regarding the finding of inconsistency with the record as a whole, an ALJ must do more than simply state that the record as a whole is inconsistent with a physician's opinion in order to validly discount that opinion. Rather, the ALJ must set out a detailed and thorough summary of the facts and conflicting evidence, state his interpretation thereof, and make findings. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

Here, the ALJ appears to have referenced his findings, including his summary of the medical evidence of record in the context of plaintiff's credibility (*see* AR. 890), but failed to link any particular part of his summary to Dr. Ballard's opinions and observations. Merely stating that "most records" are inconsistent with Dr. Ballard's opinions is insufficiently specific to survive this Court's review. *See Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to [his] conclusions so that we may afford the [plaintiff] meaningful review of the SSA's ultimate findings."). In order to review the ALJ's rationale in this regard, this Court would essentially be required to invent

findings for the ALJ and then determine whether those findings were sufficiently specific, legitimate, and supported by substantial evidence—but that is not this Court's role. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

In addition, the ALJ found that Dr. Ballard's opinions lacked sufficient support because she had not reviewed comments by other doctors—namely, a comment by Laurence Ready, M.D., a pain specialist who examined plaintiff and found that it was "possible that an element of pain embellishment is a part of this patient's clinical picture" and a comment by Daniel Nehls, MD, that there was "nothing seriously wrong with her back that would require any surgical treatment." *See* AR. 624–25, 1378, 1420. But failure to review these comments is not a legitimate reason to disregard Dr. Ballard's opinions for lack of support. First, the reasoning that Dr. Ballard's opinions lack support derives from the ALJ's failure to take into account Dr. Ballard's treatment notes that supported her opinion, as discussed above.

Moreover, Dr. Ready's opinion was about a mere "possib[ility]" of embellishment that would not be "intentional"—viewed in context, therefore, it is an ambiguous statement that is not reasonably contrary to Dr. Ballard's opinions. *See* AR. 624–25. Similarly, the entirety of Dr. Nehls' statement was that nothing was wrong with plaintiff's back that would require surgical treatment but that her problems were primarily related to "her myalgia and her arthritis"—supporting, not contradicting, portions of Dr. Ballard's opinions. *See* AR. 642, 1301–02 (opining that plaintiff was unable to undergo surgery and that plaintiff suffered from limitations caused by other conditions, not simply her neck condition). In short, the ALJ failed to provide a legitimate reason to discredit Dr. Ballard's opinion on the basis that she had not reviewed Dr. Ready's or Dr. Nehls' statements.

*B. Ms. Marshall*

A nurse practitioner is not "an acceptable medical source" but is an "'other source,'" whose testimony may be discounted by an ALJ if the ALJ provides "'reasons germane to each witness for doing so.'" *Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)).

Ms. Marshall was a treating nurse practitioner who noted "flare ups" in and possible, temporary remission of plaintiff's fibromyalgia and rheumatoid arthritis. *See* AR. 808. In 2010, Ms. Marshall found that plaintiff could work only up to 20 hours per week and needed to avoid heavy lifting or fatiguing work, although she could do light work. AR. 486. In 2011, Ms. Marshall found that due to her conditions, plaintiff had limitations to her abilities to work at the computer; sit, lift, and open things; perform normal household or office duties without assistance; and focus without interruption. AR. 807. Plaintiff also had knee and thumb joint issues and memory issues caused by her medications for chronic pain. AR. 807. Her inabilities to stand or walk for long distances interfered with her abilities to park and be on time. *See* AR. 807. On the basis of these limitations, Ms. Marshall limited plaintiff to 3 hours of work per week. *See* AR. 807.

The ALJ rejected these opinions on the basis that Ms. Marshall's contemporaneous treatment notes were inconsistent with her severe limitations: "apart from complaints of tenderness to palpitation in multiple areas, [plaintiff's] presentation was usually unremarkable in notes from 2010[.]" AR. 898. The ALJ noted a "transient" increase in symptoms around 2011, but "essentially normal findings by October 2011[.]" AR. 898.

The ALJ's findings are not inconsistent with Ms. Marshall's opinion and are not "germane" reasons to reject that opinion. Ms. Marshall explained that plaintiff's conditions were

subject to periodic flares. *See* AR. 808. Plaintiff had observable symptoms, such as swollen joints and lack of flexion in 2010 (AR. 689) and throughout 2011 (AR. 649, 652, 654, 656, 664, 667, 670, 682, 685). The fact that plaintiff's symptoms were worse on some occasions than others supports, rather than undercuts, Ms. Marshall's opinion.

This Court notes, moreover, that the ALJ's rejection of plaintiff's subjective complaints about her fibromyalgia pain in these treatment notes reflects a misunderstanding of this disease, which uniquely relies on plaintiffs' testimony and often eludes measurement by objective testing. *See Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004). Throughout Ms. Marshall's treatment notes, plaintiff complained of muscle pain and soreness, including being observed as in "acute distress" throughout 2011. *See* AR. 649, 652, 654, 658, 662–63, 667, 670, 673, 676, 679, 682, 684, 688, 690, 693, 697, 706, 708. Indeed, Ms. Marshall even repeatedly noted that plaintiff was "[p]ositive for fibromyalgia trigger points" and had some pain on palpation. AR. 679, 688–89, 691, 694, 697, 699, 703, 706. But the ALJ minimized all of this evidence, erroneously substituting "[s]heer disbelief" for "substantial evidence." *Benecke*, 379 F.3d at 594.

Not only did the ALJ erroneously find that Ms. Marshall's treatment notes were inconsistent with her opinions, but the ALJ also relied upon the same faulty reasoning regarding Dr. Ready's and Dr. Nehls' opinions as the ALJ gave for rejecting Dr. Ballard's opinions. That is, the ALJ found an opinion about a "possibility" of "unintentional" symptom embellishment contrary to Ms. Marshall's opinions, despite that substantial evidence does not support characterizing this opinion as showing that plaintiff was malingering. And the ALJ failed to explain how Dr. Nehls' opinion about back problems that did not require surgery had any bearing on Ms. Marshall's opinion about fibromyalgia and rheumatoid arthritis. *See* AR. 898. Finally, the ALJ's recitation of a sweeping statement that the opinion was inconsistent with "the

records as a whole as discussed above at finding #5 [sic], including the unremarkable findings reflected in most records; the claimant's incomplete treatment compliance; and the conservative nature of her treatment" is, as discussed above, too cursory for this Court's review. *See* AR. 898.

**IV. Not Harmless Error and Remand for Further Proceedings**

"ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination[,]' and . . . 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (quoting *Stout v. Cmm'r*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)).

The ALJ failed to give a valid reason to reject Dr. Ballards' or Ms. Marshall's opinions—opinions that contained greater limitations than the RFC in the ALJ's decision. *Compare* AR 888 *with* AR. 486–87, 642–43, 807–08, 1301–02. Additionally, the ALJ's improper application of the law-of-the-case doctrine led the ALJ to reject the treating providers' opinions and credit the reviewing physicians' opinions. Had the ALJ not made these errors, the ALJ could well have reached a different disability determination, so that the errors are not harmless.

This Court has discretion to remand for an award of benefits, rather than for further proceedings, if, among other conditions, the record has been fully developed and further administrative proceedings would serve no useful purpose, and if the improperly rejected evidence were credited as true, the ALJ would be required to find plaintiff disabled on remand. *See Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

Here, the ALJ having improperly credited the reviewing physicians' opinions on the basis of the law-of-the-case doctrine, further administrative proceedings would serve the useful

purpose of allowing the ALJ to properly weigh the evidence—without legal error—and to resolve conflicts among the medical opinions.

Plaintiff's remaining issues concern the evaluation of lay witness testimony, plaintiff's credibility, and the vocational expert's testimony. On remand, the ALJ should evaluate the lay witness testimony and plaintiff's credibility and should address any issues regarding the vocational expert's testimony anew. *See* Program Operations Manual System (POMS) GN 03106.036 *Court Remand Orders*, https://secure.ssa.gov/poms.nsf/lnx/0203106036 (last visited March 6, 2019) (a court order vacating a prior decision and remanding the case voids the prior decision and thus returns the case to the status of a pending claim). Thus this Court does not address plaintiff's remaining issues.

## CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED AND REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**JUDGMENT** should be for the plaintiff, and the case should be closed.

Dated this 12th day of March, 2019.

J. Richard Creatura
United States Magistrate Judge